# United States Court of Appeals for the Federal Circuit

2006-5096, -5117

CHAPMAN LAW FIRM CO.,

Plaintiff-Appellant,

v.

GREENLEAF CONSTRUCTION CO., INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Cross Appellant,

and

MICHAELSON, CONNOR & BOUL, INC.,

Defendant-Appellee.

James S. DelSordo, Cohen Mohr, LLP, of Washington, DC, argued for plaintiff-appellant.

Alexander J. Brittin, Brittin Law Group, PLLC, of McLean, Virginia, argued for plaintiff-appellee.

Sameer Yerawadekar, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-cross appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Mark A. Melnick, Assistant Director. Of counsel on the brief were Kimberly Nash, Senior Trial Counsel, and Robert J. Brown, Attorney-Advisor, Procurement & Administrative Law Division, United States Department of Housing and Urban Development, of Washington, DC.

Margaret A. Dillenburg, Law Offices of Margaret Dillenburg, P.C., of Washington, DC, for defendant-appellee.

Appealed from: United States Court of Federal Claims

Judge Thomas C. Wheeler

# United States Court of Appeals for the Federal Circuit

2006-5096, -5117

CHAPMAN LAW FIRM CO.,

Plaintiff-Appellant,

v.

GREENLEAF CONSTRUCTION CO., INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Cross Appellant,

and

MICHAELSON, CONNOR & BOUL, INC.,

Defendant-Appellee.

_____

DECIDED: June 11, 2007

_____

Before NEWMAN, LOURIE, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST. Circuit Judge NEWMAN concurs in part and dissents in part.

PROST, Circuit Judge.

Chapman Law Firm Co. ("Chapman") appeals a June 7, 2006, decision by the United States Court of Federal Claims declining to dismiss a bid protest filed by Chapman in light of a proposed corrective action by the United States that the court

determined lacked a rational basis and was contrary to law. Chapman Law Firm Co. v. United States, 71 Fed. Cl. 124 (2006) ("Chapman I"). The United States cross-appeals the Court of Federal Claims' rejection of its proposed corrective action and the court's refusal to dismiss the case after the United States proposed a second, revised corrective action. Chapman Law Firm Co. v. United States, No. 06-CV-330 (Fed. Cl. June 20, 2006) ("Chapman II"). We affirm the Court of Federal Claims' denial of the motion to dismiss in light of the first proposed corrective action; however, because the Court of Federal Claims improperly entered judgment for plaintiffs rather than dismissing the case after the United States proposed its revised corrective action, we reverse and remand for the Court of Federal Claims to dismiss.

## I. BACKGROUND

This case arises out of a bid protest filed by Chapman in relation to a competitive procurement initiated in August 2003 by the United States Department of Housing and Urban Development ("HUD") for management and marketing services for single-family housing owned by HUD in Michigan and Ohio. As part of this procurement, HUD employed a "cascading" procedure in which small businesses were first considered for the contract. Only if there was inadequate competition among small businesses would non-small businesses be considered.

Chapman, which competed as a small business, was awarded the contract on September 30, 2005. On April 19, 2006, however, HUD decided to terminate Chapman's contract for convenience and issue a new competitive solicitation pursuant to Federal Acquisition Regulation § 15.206(e). In response, Chapman filed a bid protest action in the Court of Federal Claims, contesting HUD's termination of Chapman's

contract, cancellation of the existing solicitation, and issuance of a new solicitation. Michaelson, Connor & Boul, Inc. ("MCB"), the incumbent contractor, and Greenleaf Construction Co., Inc. ("Greenleaf"), a competing offeror for the contract whose small business status was disputed by Chapman, intervened.

On May 19, 2006, the United States filed a motion to dismiss the protest action pursuant to Federal Rule of Civil Procedure 12(b)(6), based on HUD's decision to implement voluntary corrective action. As part of this corrective action, HUD proposed reinstating Chapman's contract and the original solicitation, and canceling a proposed "bridge" contract with MCB. The Court of Federal Claims, however, declined to rule on the United States' motion to dismiss until it received further information regarding the specifics of the proposed corrective action. On May 30, 2006, the United States provided the requested supplemental information in support of its motion to dismiss, indicating that HUD would: (1) reinstate Chapman's previously awarded contract, but issue a stop work order against the contract so that corrective action could be taken; (2) issue an amendment to all offerors in the competitive range at both small business and unrestricted competition tiers identifying various changes that had occurred since the original solicitation was issued; (3) issue a discussion letter to Chapman to review matters raised in a January 17, 2006, Government Accountability Office ("GAO") bid protest decision; and (4) request a final proposal revision from Chapman, ostensibly the only offeror in the small business tier, prior to requesting and reviewing proposals submitted by other offerors at the unrestricted tier. The Court of Federal Claims, however, denied the United States' motion to dismiss, finding that the proposed corrective action lacked a rational basis and was contrary to law because, among other

things, it did not include Greenleaf in the small business tier despite an intervening determination by the Small Business Administration ("SBA") that Greenleaf was indeed a small business.

In response, HUD indicated it would proceed with the reevaluation in the manner suggested by the Court of Federal Claims, including both Chapman and Greenleaf in the small business tier. The United States then renewed its motion to dismiss. Rather than granting the renewed motion to dismiss, though, the Court of Federal Claims instead entered judgment in favor of Chapman and Greenleaf. In doing so, the Court of Federal Claims noted that Chapman and Greenleaf "were instrumental in achieving the final outcome," and "[t]hrough their persistence . . . [had] materially altered the legal relationship among the parties." Chapman II, slip op. at 2. Furthermore, the Court of Federal Claims noted that granting the motion to dismiss might limit Chapman and/or Greenleaf from applying for attorney fees under the Equal Access to Justice Act ("EAJA"), but that the entry of judgment for plaintiffs would leave open the opportunity for Chapman and/or Greenleaf to pursue them at a later date. Id. Chapman appeals the Court of Federal Claims' denial of the United States' original motion to dismiss. The United States cross-appeals the same issue, as well as the Court of Federal Claims' entry of judgment rather than granting the renewed motion to dismiss. We have jurisdiction pursuant to 28 U.S.C. § 1491.

## II. DISCUSSION

### A. Standard of Review

This court reviews the Court of Federal Claims' conclusions of law de novo. Glendale Fed. Bank, F.S.B. v. United States, 239 F.3d 1374, 1379 (Fed. Cir. 2001).

However, within that context, the review of an agency's procurement decision is narrowly circumscribed. Prineville Sawmill Co. v. United States, 859 F.2d 905, 909 (Fed. Cir. 1988); NFK Eng'g, Inc. v. United States, 805 F.2d 372, 376 (Fed. Cir. 1986). This court can only set aside an agency's action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

Similarly, our review of the denial of a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Court of Federal Claims is also limited. The court must determine "whether the claimant is entitled to offer evidence to support the claims," not whether the claimant will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In doing so, the court "must accept as true all factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

B. Review of the Proposed Corrective Action

On appeal, Chapman and the United States both argue that the Court of Federal Claims erred when it determined that the Government's first proposed corrective action was unreasonable. According to Chapman, the Court of Federal Claims' finding that Greenleaf should be included in the small business tier of the competitive range is in error since the SBA decision that Greenleaf was a small business came after the contract was awarded to Chapman. According to the Government, the Court of Federal

Claims erred because the Government's first proposed corrective action placed the parties in the same positions they occupied prior to the events giving rise to the protest and rendered all of Chapman's and Greenleaf's legally cognizable claims either moot or premature. We reject each of these arguments.

First, the SBA determination that Greenleaf was a small business applies to this procurement because there had not been a binding final award. Moreover, the Government was requesting a revised proposal from Chapman and possibly other offerors. Second, the Government's argument that its first proposed corrective action rendered all of Chapman's and Greenleaf's claims moot or premature is also incorrect, as the corrective action effectively left out Greenleaf. Simply put, the Court of Federal Claims' inquiry into the reasonableness of the Government's first proposed corrective action, and the court's subsequent determination that the proposed corrective action was not reasonable, were proper.

C. Denial of the Renewed Motion to Dismiss

The Government also cross-appeals the Court of Federal Claims' refusal to dismiss the case in response to the revised proposed corrective action, which included both Chapman and Greenleaf in the small business tier.

Rather than granting the motion to dismiss, the Court of Federal Claims entered judgment in favor of Chapman and Greenleaf. In so doing, the Court of Federal Claims stated that Chapman and Greenleaf "materially altered the legal relationship among the parties." Chapman II, slip op. at 2. Considering that "[g]ranting [the Government's] renewed motion to dismiss might limit Chapman, and possibly Greenleaf, from applying

for attorneys' fees," the Court of Federal Claims entered judgment to leave open the opportunity of applying for such fees. Id.

In its holding, the Court of Federal Claims appears to have borrowed language from Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 605 (2001), in which the Supreme Court rejected the use of the "catalyst theory" as justification for the recovery of attorney fees. In Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1380 (Fed. Cir. 2002), we held that this rejection extended to the EAJA fee context as well. Under the catalyst theory, a plaintiff is considered a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct—no judicially sanctioned change in the legal relationship of the parties is required. In Buckhannon, the Supreme Court rejected this theory, saying that

> [a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. [Precedent] counsel[s] against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties.

532 U.S. at 605.

Merely stating that there has been an alteration in the legal relationship of the parties as the Court of Federal Claims did, however, is insufficient, by itself, to avoid running afoul of the Supreme Court's pronouncement in Buckhannon; our precedent requires that there must be an actual, court-ordered alteration in the legal relationship in the parties in the form of an entry of judgment or a consent decree. See Brickwood, 288 F.3d at 1380.

Here, the court's entry of judgment was not only unnecessary, it was improper. None of the parties objected to the substance of the revised proposed corrective action. The only opposition to the Government's motion to dismiss was raised by Chapman, and that was only because Chapman wanted attorney fees. In fact, Chapman indicated it was amenable to a dismissal—provided the court indicated it was a "prevailing party" for EAJA purposes.

Although securing attorney fees may understandably affect a party's litigation strategy, the availability of EAJA fees is not an appropriate consideration for a court when determining how to dispose of a case. When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed. And while the Supreme Court has recognized an exception to this rule when the defendant voluntarily ceases the challenged practice, see Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 (1993), the exception does not apply to this case.[1] As explained in County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979), the voluntary cessation exception may be refuted when there clearly is no "reasonable expectation" that the alleged violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (Citations omitted).

---

[1] Although the Court of Federal Claims' opinion states that "[t]his is not a case where the procuring agency voluntarily elected to follow a proper remedial course," Chapman II, slip op. at 2, the opinion is simply incorrect. The fact that the Government revised its proposed corrective action after the Court of Federal Claims rejected its first proposal does not make the revised proposal any less voluntary.

Here, the Court of Federal Claims had already determined that the revised corrective action was reasonable, and was required to assume that the Government would carry out the corrective action in good faith. See T&M Distribs., Inc. v. United States, 185 F.3d 1279, 1285 (Fed. Cir. 1999) ("Government officials are presumed to act in good faith, and 'it requires "well-nigh irrefragable proof" to induce a court to abandon the presumption of good faith.'" (quoting Kalvar Corp. v. United States, 543 F.2d 1298, 1301-02 (Ct. Cl. 1976))). The revised corrective action adequately addressed the effects of the challenged action, and the Court of Federal Claims had no reasonable expectation that the action would recur. Accordingly, the Court of Federal Claims should have dismissed the case. Entering judgment for plaintiffs was, therefore, improper.

## III. CONCLUSION

We affirm the Court of Federal Claims' denial of the Government's motion to dismiss in light of its first proposed corrective action; however, because the Court of Federal Claims improperly entered judgment for plaintiffs after the Government revised its proposed corrective action, we reverse and remand for the Court of Federal Claims to dismiss the complaint.

## COSTS

No costs.

## AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

NEWMAN, Circuit Judge, concurring in part, dissenting in part.

I would affirm the rulings of the Court of Federal Claims as to not only Chapman's appeal, but also the government's cross-appeal.